

NUMBER 13-13-00427-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ERIC CHRISTOPHER GONZALEZ
A/K/A ERIC CHRISTOBAL GONZALEZ,                    Appellant,

v.

THE STATE OF TEXAS,                                Appellee.

**On appeal from the 107th District Court
of Cameron County, Texas.**

# OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria
Opinion by Justice Longoria**

By thirteen issues, appellant Eric Christopher Gonzalez a/k/a Eric Christobal Gonzalez challenges his convictions for felony murder (Count I), aggravated assault (Count II), evading arrest (Count III), and possession of a controlled substance

(marijuana) (Count IV).  *See* TEX. PENAL CODE ANN. §§ 19.02(b)(3), 22.02(a), 38.04(a) (West, Westlaw through 2013 3d C.S.); TEX. HEALTH & SAFETY CODE ANN. § 481.112 (West, Westlaw through 2013 3d C.S.).  We affirm.

## I. BACKGROUND

The Harlingen Police Department (HPD) learned from an anonymous phone call that a light-skinned male driving a light blue pickup truck was buying packing materials several times a week at a storage center.  The caller believed that the frequency of the purchases indicated that the buyer could be shipping narcotics.  HPD Officer Jose Garcia ran a check on the license plate number supplied by the caller and found an address in Rio Hondo, Texas associated with the vehicle.  Officer Garcia and several colleagues first drove to the storage center in an unmarked car, but after finding the center closed, they began the drive to the Rio Hondo address.  While stopped at a traffic light, the officers noticed a light blue pickup truck also waiting at the light in the lane going the opposite direction.  The police verified that the license plate number matched the one provided by the informant, turned around, and followed the vehicle to an apartment building in San Benito, Texas.  Less than ten minutes later, appellant exited the apartment building and entered the truck accompanied by a woman later identified as his wife.  Officer Garcia testified that appellant appeared to be hiding something under his shirt as he exited.  The police followed the truck onto the freeway and allegedly observed the truck change three lanes without signaling, before exiting onto the frontage road, and traveling over to the right lane without signaling.

At that point, Officer Garcia contacted the HPD gang unit to make a traffic stop of the truck.  An officer of the gang unit in a marked police car activated the lights on his car

and attempted to pull appellant's truck over. Officer Garcia testified that the truck "slows a little bit like it's going to pull over and . . . it just pulls over a little bit, and then it takes off at a high rate of speed." A vehicle chase ensued in which two marked police cars as well as the unmarked car pursued appellant, with the marked cars in the lead. During the chase, the police observed the truck drive past two stop signs without stopping. The chase ended when the truck struck an oncoming car at the intersection of Ed Carey Road and the Frontage Road and resulted in the death of the passenger in the vehicle, Marie de La Luz.

The police arrested appellant and his wife and performed a search of the truck. Officer Tim Flores's search disclosed a .22 caliber pistol and two baggies of marijuana in a compartment hidden in the truck's center console. A separate group of police went to the apartment of Francina Flores, a friend of appellant's wife, who lived in the same building that police earlier observed appellant and his wife exit. Flores signed a consent-to-search form, and the police discovered "packaging for a large shipping scale, plastic bags, gloves, cellophane wrap, [and] marijuana" in her apartment. The police also found "Mr. Gonzalez's wife's I.D. in one of the bags with some marijuana."

The State indicted appellant with felony murder in the death of the passenger of the vehicle he struck with the predicate offense of evading arrest (Count I), aggravated assault in the injuries sustained by the driver of the vehicle he struck (Count II), a separate charge of evading arrest that contained the same conduct as the predicate offense alleged in Count I (Count III), two counts of possession of a controlled substance (Counts IV and V), and possession of a firearm by a felon (Count VI). *See* TEX. PENAL CODE ANN. §§ 19.02(b)(3), 22.02(a), 38.04(a); TEX. HEALTH & SAFETY CODE ANN. § 481.112; TEX.

3

PENAL CODE ANN. § 46.04(a) (West, Westlaw through 2013 3d C.S.). On appellant's motion, the trial court struck Count V and severed Count VI into a separate proceeding that is not before us. Appellant plead not guilty to Counts I - IV, and a jury returned a verdict of guilty on all four counts. The trial court assessed punishment at fifty years' imprisonment on Count I, twenty years' imprisonment on Count II with an affirmative deadly weapon finding, twenty years' imprisonment on Count III, and two years' imprisonment on Count IV. The trial court ordered the sentences to run concurrently.

Appellant filed a timely motion for new trial alleging that he received ineffective assistance of counsel and cited seven different instances where he alleged that his counsel failed to provide reasonable professional assistance.[1] The trial court set the motion for a hearing on August 26, 2013. On August 9, appellant filed a motion requesting to be personally present at the hearing. Shortly after the State filed a response, the trial court rescinded its order setting a hearing on the motion for new trial and denied both motions.

## II. HEARING ON MOTION FOR NEW TRIAL & APPELLANT'S RIGHT TO BE PRESENT

By his first two issues, appellant argues that the trial court erred in not holding an evidentiary hearing on his motion for new trial and in denying his motion to be physically

---

[1] Appellant alleged that his original trial counsel performed deficiently by failing to: (1) object to an allegedly erroneous jury charge that did not properly restrict the culpable mental state to the "result" of appellant's conduct; (2) request a jury instruction on the defense of mistake of fact; (3) request an extraneous-offense instruction in the jury charge; (4) request a mid-trial instruction regarding the same issue; (5) preserve error by making a sufficiently specific objection to the admission of marijuana from Flores' apartment under Texas Rules of Evidence 404(b) and 403, *see* TEX. R. EVID. 403, 404(b); (6) make a motion in limine requesting that the State or any of its witnesses be prevented from referring to the complainants as "victims"; and (7) provide timely notice of his intent to call a mental health expert, Dr. Tomas Gonzalez, M.D., resulting in the court's decision to strike the expert and preventing the expert from presenting mitigating evidence during the punishment phase of the trial.

present during the hearing.  We will only discuss the issue of the evidentiary hearing because it is dispositive of both issues.  *See* TEX. R. APP. P. 47.1.

### A.  Standard of Review and Applicable Law

The trial court has a duty to hold an evidentiary hearing on a defendant's motion for new trial if the motion and accompanying affidavit raise an issue (1) that is not determinable from the record, and (2) on which the defendant could be granted relief. *Lucero v. State*, 246 S.W.3d 86, 94 (Tex. Crim. App. 2008).  Even if the motion raises matters that are not determinable from the record, to prevent "fishing expeditions," the motion must be supported by an affidavit that explicitly sets out the factual basis for the claim.  *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009).  The affidavit does not need to establish a *prima facie* case or even reflect every component to obtain relief on the claim, but must merely reflect "reasonable grounds" for a court to hold that relief could be granted.  *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003).  Where a defendant asserts that he is entitled to a hearing on a motion for new trial raising ineffective assistance of counsel, the motion and affidavit "must allege sufficient facts from which a trial court could reasonably conclude *both* that counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different."  *Smith*, 286 S.W.3d at 341 (emphasis in original).

We review the trial court's decision on whether to hold a hearing on a defendant's motion for new trial for abuse of discretion.  *Lucero*, 246 S.W.3d at 94.  A trial court abuses its discretion only when its decision lies outside the zone of reasonable disagreement.  *Smith*, 286 S.W.3d at 339.  In this context, our review is limited to the trial court's

5

determination of whether defendant raised an issue that is not determinable from the record and provided reasonable grounds for a court to hold that relief could be granted. *Id.* The trial judge has no discretion not to hold a hearing if the defendant meets both criteria. *Id.*

### B. Analysis

In his motion for new trial, appellant alleged seven instances of deficient performance by his original counsel and attached an affidavit from that counsel affirming that none of the instances were the result of his trial strategy. Appellant argues that the trial court abused its discretion by not holding an evidentiary hearing because the motion and the attached affidavit: (1) raised an issue that is not determinable from the record, and (2) demonstrated sufficient facts to put the trial court on notice that there might be reasonable grounds to grant relief.

The State does not contest appellant's first point, but argues that the affidavit itself is insufficient because it does not address the prejudice prong of the *Strickland* analysis for claims of ineffective assistance of counsel. The standard for a claim of ineffective assistance of counsel requires a defendant to "demonstrate that counsel's performance was so deficient that it fell below an objective standard of reasonableness" and to also "show that there is a reasonable probability that the final result would have been different but for counsel's errors." *Foley v. State*, 327 S.W.3d 907, 913 (Tex. App.—Corpus Christi 2010, pet. ref'd) (citing *Thompson v. State*, 9 S.W.3d 808, 812–13 (Tex. Crim. App. 1999)).

In this case, it is true that trial counsel filed an affidavit in which he asserted that he did not have a trial strategy in all of the seven instances that appellant cited in the

6

motion for new trial. However, the affidavit does not assert that the behavior was constitutionally deficient, only that it was not the result of a trial strategy. The affidavit also does not assert or mention prejudice at all regarding the first six issues. With regard to the exclusion of the punishment witness, the affidavit states: "I believe that Dr. Gonzalez would have provided evidence in mitigation of punishment that would have benefited [appellant]."[2] The State argues that the motion and affidavit are insufficient because they do not explain how the allegedly deficient performance could have affected the result of the trial, and the statement regarding the testimony Dr. Gonzalez would have given is conclusory. Appellant responds that the State's interpretation of the motion and affidavit is "myopic" because the allegedly deficient representation could conceivably have resulted in prejudice and that was the only showing the law requires him to make. We, however, agree with the State.

The affidavit supporting appellant's motion was not required to make even a *prima facie* case for ineffective assistance of counsel, but it was required to demonstrate reasonable grounds to show that appellant could establish both prongs of the *Strickland* analysis. *Smith*, 286 S.W.3d at 341–42. Appellant characterizes the State's response as quibbling over the specific phrases used in the affidavit and asserts that he was not required to use magic words to establish reasonable grounds for the prejudice prong. We agree that no "magic words" such as "prejudice" are required, but case law is consistent that the motion must also put the trial court on notice that there are "reasonable grounds" to believe that the allegedly deficient representation could have altered the result of the trial. *See id.* at 342 ("In addressing the prejudice prong, the appellant's motion merely

---

[2] Counsel's affidavit also explains why he believed that he successfully preserved error in the admission of evidence from Francina Flores' apartment, an issue that we discuss below.

7

alleged that 'the information about which he would have testified may well have resulted in a different outcome.' He made no attempt to explain how this might be so."); *Buerger v. State*, 60 S.W.3d 358, 363 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("[Appellant] failed to explain or demonstrate how these actions [of trial counsel], if true, were deficient or how they harmed him."); *see also King v. State*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000) (en banc) (finding that a hearing was not warranted on a motion that alleged, among other things, that a witness was threatened by the State because the "motion and affidavit explain neither who threatened [the witness] nor what [the witness's] testimony would have been").

Appellant relies on a series of cases which he correctly states found reasonable grounds where the motion and affidavit did not directly allege prejudice. However, the motion and affidavit in those cases nevertheless demonstrated how the allegedly deficient conduct could have affected the result of the trial. In *Barnett v. State*, for example, Barnett alleged that his counsel was ineffective for failing to call a particular witness to testify despite knowing she was available. 338 S.W.3d 680, 685 (Tex. App.—Texarkana 2011, pet. ref'd) (per curiam). Barnett was able to demonstrate, via the would-be witness's original statement to police, that the witness's testimony would have contradicted the testimony of other witnesses that the defendant used a knife during an assault. *Id*. Barnett also alleged that his trial counsel failed to investigate the possibility of introducing mitigating evidence at the punishment stage and specified the evidence: his long history of mental illness. *Id.* at 686–87.[3] In this case, by contrast, appellant has not attempted

---

[3] The other cases appellant relies on are similar to *Barnett*:

In *Rodriguez v. State*, the defendant alleged that her counsel was deficient for failing to call a specific medical expert as a witness and described how that expert's testimony would have contradicted

8

to show reasonable grounds that the six of the seven alleged acts of deficient representation, if true, could have affected the result of the trial. *See Smith*, 286 S.W.3d at 342; *Buerger*, 60 S.W.3d at 363; *see also King*, 29 S.W.3d at 569. For the seventh instance, the affidavit only states that trial counsel believed the expert "would have provided evidence in mitigation of punishment that would have benefited" appellant, but this is the sort of conclusory statement regarding prejudice that courts have rejected as insufficient to put the trial court on notice that there were reasonable grounds that relief could be granted. *See Smith*, 286 S.W.3d at 342.

In sum, we hold that affidavit of appellant's trial counsel was insufficient to put the trial court on notice that there were reasonable grounds to believe that relief could be granted. *See id.*; *Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007) (finding that deprivation of counsel during the thirty-day period after conviction was harmless because allegations in the motion to abate that "trial counsel failed to call a named material witness in his defense and failed to conduct the promised investigation" were conclusory); *Buerger*, 60 S.W.3d at 363; *see also King*, 29 S.W.3d at 569. We must emphasize that we are not holding that a motion for new trial and the accompanying affidavit must use magic language, but only that they must provide reasonable grounds

---

the State's theory of causation in her trial for the murder of her infant child. 82 S.W.3d 1, 3 (Tex. App.—San Antonio 2001, pet. dism'd).

Similarly, in *Mendoza v. State*, the defendant alleged that she suffered prejudice from trial counsel's failure to object to the State's "wide-open cross-examination" that resulted in her confessing to the offense in open court. 935 S.W.2d 501, 503 (Tex. App.—Waco 1996, pet. ref'd). The only question was counsel's trial strategy or lack thereof in failing to object.

In *Alvarado*, an unpublished case, the defendant alleged his counsel was ineffective for not conducting an independent investigation and was able to demonstrate some of the evidence his counsel would have discovered if counsel had investigated. *See Alvarado v. State*, No. 04-03-00289-CR, 2004 WL 1102764, at *7 (Tex. App.—San Antonio May 19, 2004, no pet.) (mem. op., not designated for publication).

to put the trial court on notice that appellant could establish both prongs of the *Strickland* test. *See Smith*, 286 S.W.3d at 342. We overrule appellant's first issue.

We do not need to address appellant's second issue, regarding whether he was entitled to be present at the hearing, because we have concluded that the court did not abuse its discretion in not holding an evidentiary hearing. *See Jackson v. State*, 379 S.W.2d 896, 896 (Tex. Crim. App. 1964) (setting out that reversal is required only if the defendant desires to be present at the hearing, a hearing occurred, and the appellant was denied the right to be present). We accordingly do not reach the merits of appellant's second issue. *See* TEX. R. APP. P. 47.1.

III. MOTION TO SUPPRESS

By his third issue, appellant argues that the trial court erred in denying his oral pre-trial motion to suppress the traffic stop of appellant as unsupported by reasonable suspicion.[4]

**A. Standard of Review and Applicable Law**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We give great deference to the trial court's findings of fact but we review de novo the trial court's application of the law of search and seizure to the facts of the case. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). We will affirm the trial court's decision if it

---

[4] Appellant filed two motions to suppress, one written and one oral. The written motion to suppress asked the court to suppress post-arrest statements appellant made to law enforcement officers. Appellant's counsel told the trial court that he was under the mistaken impression that he filed a second motion seeking suppression of the stop itself and all evidence the State obtained for it. Appellant never filed the second motion, but the trial court judge and the State agreed to proceed on both motions in a single pre-trial suppression hearing. The trial court judge explicitly denied both motions at the end of the hearing. On appeal, appellant addresses only the matters he raised in the oral motion.

10

has reasonable support in the record and is correct under any theory of law applicable to the case. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).

Under the Fourth Amendment, police officers have reasonable suspicion to detain a citizen when they are aware of "specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). These facts must "amount to more than a mere inarticulate hunch, suspicion, or good faith suspicion that a crime was in progress." *Id.* (citation and quotation marks omitted). A traffic stop is a detention for Fourth Amendment purposes. *Vasquez v. State*, 324 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Davis v. State,* 947 S.W.2d 240, 243–45 (Tex. Crim. App. 1997)). In the context of a traffic stop, an officer may initiate a stop if the officer has reasonable grounds for suspecting that a driver has committed a traffic violation. *Id.*

**B. Discussion**

At trial, the State offered three justifications as a reasonable basis for detaining appellant through a traffic stop: (1) the officers allegedly witnessed appellant perform an unsafe lane change; (2) the officers allegedly witnessed appellant fail to use a turn signal; and (3) the windows on appellant's truck were illegally tinted.[5] *See* TEX. TRANSP. CODE ANN. §§ 545.060(a), 545.104(a), 547.613 (West, Westlaw through 2013 3d C.S.). Appellant contests all of these justifications, but we need not resolve this disagreement over reasonable suspicion because we conclude that appellant was not detained until the police arrested him after the crash. A seizure under the Fourth Amendment "entails the

---

[5] The State abandoned the third justification and does not raise it on appeal.

11

use of physical force or submission to authority." *Johnson v. State*, 912 S.W.2d 227, 234 (Tex. Crim. App. 1995) (en banc). However, a show of authority that does not involve the application of physical force and to which a suspect does not yield is not a seizure for purposes of the Fourth Amendment. *Id.*; *see Blount v. State*, 965 S.W.2d 53, 55 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). Here, the officers in the marked unit contacted by Officer Garcia activated their emergency lights to begin a stop which, in these circumstances, was a show of authority for Fourth Amendment purposes. *See Hernandez v. State*, 963 S.W.2d 921, 924 (Tex. App.—San Antonio 1998, pet. ref'd). Even though appellant briefly slowed down when the officers first activated the emergency lights in the marked police cars, he did not yield to the show of authority and instead began a high-speed chase. In these circumstances, the seizure was not complete until the police physically limited appellant's movements by arresting him after the crash. *See id.* at 924–25 (holding that a defendant was not seized when he threw cocaine out of his car after the officer activated his emergency lights because the defendant gave no sign that he submitted to the show of authority until after he discarded the cocaine); *see also Villarreal v. State*, No. 13-10-00605-CR, 2011 WL 6303252, at *3 (Tex. App.—Corpus Christi Dec. 15, 2011, pet. ref'd) (mem. op., not designated for publication) (holding that an officer did not seize a defendant when he activated his emergency lights but the defendant instead "led the police on a high speed chase"). Appellant does not challenge the validity of his arrest following the crash.[6] We overrule appellant's third issue.

---

[6] We note that the uncontested evidence also shows that the officers observed appellant drive past two stop signs without stopping during the chase, giving the officers justification to detain him even before the chase ended with a crash. *See Vasquez v. State*, 324 S.W.3d 912, 920 (Tex. App.—Houston [14th

12

## IV. Double Jeopardy

By his fourth issue, appellant argues that the trial court erred in denying his motion for a directed verdict on the grounds that convicting him for Count I (Felony Murder) and Count III (evading arrest) violated constitutional protections against double jeopardy because Count III is based on the same facts as the predicate offense in Count I.

### A. Standard of Review and Applicable Law

The Double Jeopardy Clause provides three distinct protections: "First, protection against a second prosecution for the same offense after acquittal. Second, protection against a second prosecution for the same offense after conviction. Third, protection against multiple punishments for the same offense." *Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008). Appellant's argument involves a claim under the multiple punishments protection, which can arise in two separate contexts: if one offense is a lesser-included offense of the other, or if the two offenses are contained in separate statutory provisions but the Legislature has made clear it only intended to impose one punishment. *Littrell v. State*, 271 S.W.3d 273, 276 (Tex. Crim. App. 2008); *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006).

As our starting point, we analyze whether the two offenses are the same under the *Blockburger* test. *Bigon*, 252 S.W.3d at 370. "Under the *Blockburger* test, two offenses are not the same if one requires proof of an element that the other does not." *Id.*; *see Langs*, 183 S.W.3d at 685. Under the Texas Court of Criminal Appeals' cognate-pleadings approach, a defendant may still make a double jeopardy claim if the indictment alleges the same "facts required" for both offenses. *Bigon*, 252 S.W.3d at 370. We make

---

Dist.] 2010, pet. ref'd) ("It is well settled that a traffic violation committed in an officer's presence authorizes an initial stop." (quoting *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982)).

that determination as a matter of state law by comparing the elements of the greater and lesser offenses as alleged in the indictment. *Littrell,* 271 S.W.3d at 276 (citing *Hall v. State*, 225 S.W.3d 524, 525 (Tex. Crim. App. 2007)). If one offense is a lesser-included offense of the other under this analysis, then we presume that the offenses are the "same" for purposes of double jeopardy and that the accused may not be punished for both. *Id.* at 276. If the two offenses are the same for these purposes, we must still determine whether the legislature intended to allow courts to punish the same conduct under both offenses. *Bigon*, 252 S.W.3d at 371; *Littrell*, 271 S.W.3d at 276 (observing that the question is whether the legislature "has clearly expressed a contrary intention that the accused should in fact be punished for both the greater and the lesser-included offenses"); *Garza v. State*, 213 S.W.3d 338, 352 (Tex. Crim. App. 2007).

### B. Analysis

Appellant argues that this case is identical to *Littrell*, where the Texas Court of Criminal Appeals concluded that the State violated the protection against multiple punishments by punishing the defendant for a count of felony murder, with the predicate felony of aggravated robbery, and a separate count of aggravated robbery that contained the same facts as the predicate felony alleged in the first count. 271 S.W.3d at 276–77. The *Littrell* Court agreed that the two offenses were the same for these purposes because for the State to prove the separate count of aggravated robbery, "the State need prove no additional fact that is not already contained" in the felony murder count. *Id.* at 277. Appellant argues that it is the same in this case, and we agree to the extent that the two offenses are the same for multiple-punishment purposes. In order to prove felony murder as alleged in Count I, the State needed to prove the evading-arrest offense in Count III

14

plus additional facts, but to prove the evading-arrest offense in Count III the State does not need to prove any additional facts not already contained in Count I. *Compare* T<small>EX</small>. P<small>ENAL</small> C<small>ODE</small> A<small>NN</small>. § 19.04(b)(3) (felony murder) *with id.* § 38.04(a) (evading arrest); *see Littrell*, 271 S.W.3d at 277. Even though the two offenses are not the same under *Blockburger* because Count I requires proof of an element Count III does not, we agree with appellant that Count III is a lesser-included offense of Count I. *See Littrell*, 271 S.W.3d at 277*.* The two counts are thus the "same offense" for purposes of the protection against multiple punishments. *See id.*

We now turn to question of whether the Legislature has clearly indicated that appellant should nevertheless be punished for both offenses. *Id.* at 278; *see Bigon*, 252 S.W.3d at 371 (holding that the inquiry in the multiple punishments-protection context "ultimately is whether the legislature intended to allow the same conduct to be punished under both of the offenses"). The Texas Court of Criminal Appeals did not find any such legislative intent in *Littrell* because there was nothing in the language of the felony murder statute or the aggravated robbery statute to indicate that the Legislature intended to authorize punishment under both statutes. *Littrell*, 271 S.W.3d at 278. It is here that this case diverges from *Littrell*.

The *Littrell* Court pointed to section 22.04(h) of the penal code as an example of the language the Legislature employs when it intends to authorize multiple punishments. *Id.* Section 22.04(h) provides: "A person who is subject to prosecution under both this section and another section of this code may be prosecuted under either or both sections." *Id.* (citing T<small>EX</small>. P<small>ENAL</small> C<small>ODE</small> A<small>NN</small>. § 22.04(h) (West, Westlaw through 2013 3d C.S.)). The State argues that the Legislature expressed its intent to authorize multiple punishments

15

in the evading arrest statute by using similar language: "A person who is subject to prosecution under both this section and another law may be prosecuted under either or both this section and the other law." TEX. PENAL CODE ANN. § 38.04(d) (West, Westlaw through 2013 3d C.S.). This is an issue of first impression for the evading-arrest statute, but the language in section 38.04(d) is not materially different from the language in section 22.04(h). We agree that section 38.04(d) indicates legislative intent to allow multiple punishments under the evading arrest statute. *See Littrell*, 271 S.W.3d at 278; *Ex parte Pool*, 71 S.W.3d 462, 468 (Tex. App.—Tyler 2002, no pet.) (reaching the same conclusion with similar language in section 25.07 of the Texas Penal Code). Therefore, we conclude that appellant's double-jeopardy rights were not violated, and we overrule appellant's fourth issue.

## V. ISSUES FIVE AND SIX: JURY INSTRUCTIONS

By his fifth and sixth issues, appellant argues that the trial court erred in denying his requested jury instructions on: (1) Francina Flores' consent to search his apartment; and (2) the legality of the search of the vehicle that revealed the baggies of marijuana.

### A. Standard of Review and Applicable Law

Generally, a trial court has a duty to submit a defensive issue to the jury if evidence from any source raises the issue, and the defendant properly requests a jury instruction on that issue. *Mendoza v. State*, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002) (en banc). If the defendant raises an issue of fact regarding how evidence is obtained and requests an instruction, the trial court must instruct the jury to disregard any illegally-obtained evidence. *Id.*; *see* TEX. CODE CRIM. PROC art. 38.23(a) (West, Westlaw through 2013 3d C.S.). The evidence raising the issue of fact "may be strong, weak, contradicted,

16

unimpeached, or unbelievable." *Mendoza*, 88 S.W.3d at 239 (quotation marks omitted). The defendant must show three elements to merit an article 38.23(a) jury instruction: (1) the jury heard evidence raising an issue of fact; (2) the evidence on that fact is affirmatively contested; and (3) the contested factual issue is material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). However, if there is no disputed issue of material fact, the trial judge alone determines the legality of the conduct as a question of law. *Id.* at 511.

## B. Discussion

### 1. Search of Flores' Apartment

By his fifth issue, appellant argues that he was entitled to a jury instruction on whether Francina Flores freely gave consent to search her apartment. Flores testified on cross-examination that she was "pretty much forced to" sign the consent form because an HPD officer allegedly threatened to have Child Protective Services remove Flores's children from her custody if she did not. Appellant argues that Flores's testimony raised an issue of material fact regarding whether Flores freely gave consent to search. We must first consider the State's argument, which it makes for the first time on appeal, that appellant lacked standing to contest the validity of the search. *See Kothe v. State*, 152 S.W.3d 54, 59–60 (Tex. Crim. App. 2004) (standing is a question of law that we review de novo and which may be raised by the State for the first time on appeal).

The Texas Court of Criminal Appeals has explained that the right to be free from unreasonable searches and seizures is a personal right. *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013) (citing *Rakas v. Illinois*, 439 U.S. 128, 139 (1978)). An accused has standing to challenge the legality of a search or seizure only if he personally

17

had a "legitimate expectation of privacy in the place invaded."[7] To establish a legitimate expectation of privacy, a defendant must show both that he "had a subjective expectation of privacy in the place invaded and that society is prepared to recognize that expectation of privacy as objectively reasonable." *Id.* We consider the following non-exclusive list of factors in making this determination:

> (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy.

*Id.* at 203–04 (citing *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002)). No single factor is dispositive. *Id.* In *Betts*, the Texas Court of Criminal Appeals determined that a defendant charged with animal cruelty had standing to contest a search that revealed dogs that appellant kept in the backyard of a house owned by his aunt. *Id.* at 204. The defendant did not have any ownership interest in the property and did not live there, but had explicit permission from his aunt to keep the dogs in the backyard and to enter the premises on a daily basis to feed and water them. *Id.* The Texas Court of Criminal Appeals recognized that appellant had no ownership interest in the property, but held that ownership "is just one factor to consider and not a requirement for a person to have standing to challenge improper police actions." *Id.* The Court found that appellant did have standing to contest the search because the dogs were his personal property, he

---

[7] Put another way, a defendant seeking suppression "must prove that he was a 'victim' of the unlawful search or seizure. He has no standing to complain about the invasion of someone else's personal rights." *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004).

18

had daily right of access, and he kept the dogs in permanent structures in the backyard. *Id.* at 205.

Here, appellant agrees with the State that he had no ownership interest in the apartment, but argues that he obviously had a subjective expectation of privacy in the apartment because he would not have opted to store the marijuana there otherwise. Appellant also argues that the expectation of privacy was objectively reasonable because Flores "clearly permitted him the rights to ingress and egress" and consented to appellant storing his marijuana in the apartment. Appellant also took steps to keep the marijuana private by storing it in an opaque bag. We disagree: the record does not indicate that appellant had a reasonable expectation of privacy in Flores' apartment. Appellant argues that Flores permitted "him the right of ingress and egress," but the State specifically asked Flores if appellant and his wife had the "freedom to walk in and out of your apartment," and Flores answered: "No, they didn't. I answered the door [on the day of the chase] but went back to bed." The only private use to which appellant put the apartment was storing the marijuana. Finally, it is uncontested that appellant did not have a possessory interest over the apartment. *See id.* at 203–04.

Based on all of these factors, we conclude that appellant has not established that he had standing to contest the validity of Flores' consent to search. *See id.*; *see also Villarreal v. State*, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996) (en banc) (concluding that a defendant who spent "one or two hours" in a house "in order to arrange a business transaction," and then returned later to avoid arrest, had no standing to contest police entry into the residence). He was therefore not entitled to a jury instruction to that effect. We overrule appellant's fifth issue.

## 2. Search of the Vehicle

Appellant next argues that there is a material fact question about the legality of the search of his vehicle that revealed the compartment with the baggies and the firearm. Appellant asserts that the issue arises from an alleged contradiction between Officer Tim Flores's testimony at the pre-trial suppression hearing and during the trial on the merits regarding how he discovered the firearm and marijuana. At the suppression hearing, Officer Flores testified that he entered the vehicle from the driver's side and when he leaned on the center console of the car, the "insert" covering the hidden compartment slid off in his hand. At the trial on the merits, Officer Flores viewed a video recording of the search which showed him entering through the passenger compartment and admitted that his pre-trial testimony was mistaken on that point. However, Officer Flores consistently reiterated the remainder of his testimony from the suppression hearing, despite cross-examination by appellant regarding how the insert could have come loose when it was set several inches deep into the console. Appellant also questioned Officer Flores regarding how he was able to pull up the insert when it was so well secured with "snaps" that it would require tools to pull up and that the snaps in appellant's truck were broken.

The State responds that both of the alleged conflicts in his testimony are immaterial because appellant does not explain why the side on which Flores entered the vehicle is relevant, and Officer Flores never departed from his testimony that the center console "easily opened" during the search. We agree with the State. Even if we agreed both that Officer Flores contradicted his testimony at the suppression hearing and that he would have needed tools to pull up the insert, appellant does not explain the significance of

20

either fact to the legality of the search. Appellant's brief also does not cite to any authority (beyond authority on an article 38.23 jury instruction in general) that might explain his argument in this respect. *See Madden*, 242 S.W.3d at 511 (holding that the disputed fact at issue "must be an essential one in deciding the lawfulness of the challenged conduct"). Appellant's brief must "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i); *see Kuykendall v. State*, 335 S.W.3d 429, 436 (Tex. App.—Beaumont 2011, pet. ref'd) ("Given the lack of any discussion of law or citation to authorities in appellant's brief . . . that argument is inadequately briefed and is therefore considered waived."). As such, appellant has not demonstrated that he was entitled to a jury instruction on this matter. Accordingly, we overrule appellant's sixth issue.

## VI. ISSUES SEVEN THROUGH TWELVE: ADMISSION OF EVIDENCE

By his seventh through twelfth issues, which appellant discusses together, appellant argues that the trial court erred in admitting the marijuana found in Francina Flores' apartment, as well as police photographs of it, because the evidence was inadmissible under rules of evidence 401, 403, and 404(b). *See* TEX. R. EVID. 401, 403, 404(b). The State responds that: (1) Count IV actually referred to the marijuana in both the truck and the apartment, or (2) the evidence from the apartment was properly admitted as same transaction contextual evidence for Count IV. We will address appellant's arguments in turn.

### A. Standard of Review and Applicable Law

We review a trial court judge's decision on whether evidence is admissible for abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). We

21

will not reverse so long as we find the judge's decision lies within the zone of reasonable disagreement. *Id.* We will uphold the ruling if it is correct under any applicable theory of law, even if the trial court relied on an incorrect reason for reaching its decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

In Texas, relevant evidence is admissible unless excluded by Constitution, statute, or rule. TEX. R. EVID. 402. Despite any relevancy it might have, "evidence of other crimes, wrongs, or acts is not admissible to prove a person's character and/or to show that the person acted in conformity with that character." TEX. R. EVID. 404(b). The purpose of this rule is to ensure that a defendant is tried only for the charged offense and not for any criminal propensities he might possess. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). However, evidence of extraneous offenses may be admissible for purposes unrelated to proving criminal propensity, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Berry v. State*, 233 S.W.3d 847, 858 (Tex. Crim. App. 2007) (citing TEX. R. EVID. 404(b)). As part of this exception, same transaction contextual evidence may be admissible in circumstances "where several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others." *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000); *see Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *Trevino v. State*, 228 S.W.3d 729, 734 (Tex. App.—Corpus Christi 2006, pet. ref'd) (observing that "an offense is not tried in a vacuum"). But same transaction contextual evidence is admissible only when the charged offense "would make little or no sense" without also bringing in that evidence, and it is admissible only to the degree necessary

22

for the jury to understand the charged offense.  *Devoe,* 354 S.W.3d at 469; *Wyatt,* 23 S.W.3d at 25.

### B.  Analysis

#### 1.  The Reach of Count IV

The State first asserts that the marijuana police found in Flores' apartment was admissible because Count IV actually encompassed both the marijuana found in the apartment and the marijuana found in appellant's truck.  We disagree.

The State originally charged appellant with two counts of possession of marijuana, Counts IV and V.  Both counts were identically worded, including in the amount of marijuana appellant allegedly possessed.  The State successfully moved to amend Count IV to include the county in which it allegedly took place but did not amend or seek to amend Count V.  Appellant filed a motion in limine covering extraneous offenses and argued that the two counts referred to the same set of facts and should be brought together.  The State responded:  "Count IV is dealing with the marijuana in the car; and Count V is dealing with the marijuana at the house, at the apartment."  The trial court judge granted "the motion in limine as to the marijuana at the apartment."  Appellant immediately moved to strike Count V on the grounds that it was otherwise identical to Count IV.  Appellant asserted that the State impliedly admitted that the two charges were identical because the State did not move to amend Count V when it amended the rest of the indictment.  The trial court granted appellant's motion and struck Count V.  Appellant's trial counsel asked the judge if he could now "assume that Count IV is dealing with the drugs that we found in the vehicle; is that correct?"  The trial judge responded:  "As far as I can interpret it, yes."  The State did not contest the trial court's answer, but responded:

"the marijuana that came – that were found in the vehicle, the State's contention is that that came from the apartment. And I wish to bring in evidence to that effect. I will approach the bench before I bring in that evidence, but that's my intention." We interpret the State as meaning that it intended to introduce the marijuana from the apartment because it was relevant to appellant's guilt on possession of marijuana from the truck. In other words, the State continued to assert that the two counts were separate.

During the trial on the merits, when the State was about to introduce the marijuana found in the apartment, appellant's trial counsel objected on the ground of relevancy, among others, because appellant was "not being charged with" possessing that marijuana. We interpret this to mean that appellant now took the position that Count IV and Count V were not duplicative but referred to separate units of marijuana. The court overruled appellant's objection.

On appeal, the State now asserts:

[t]he facts as presented to the jury reveal that on the day in question, Appellant was guilty not of two separate incidents of possession of marijuana; but rather, he was guilty of a single continuing offense, which encompassed the marijuana in his truck, as well as the marijuana in the apartment.

However, the State cites to no authority supporting its argument that Count IV encompassed the marijuana in both places, we can find none, and this position contradicts the position it consistently took in the trial court. *See Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000) (en banc) (holding that if a party makes a novel argument "for which there is no authority directly on point" the party "must ground his contention in analogous case law or provide the Court with the relevant jurisprudential framework for

24

evaluating his claim"). We are not persuaded by this portion of the State's argument. *See id.*

### 2. Same Transaction Evidence

The State next argues that the evidence is appropriate same transaction contextual evidence. The State's argument is that the search of Francina Flores's apartment revealed that appellant was using the apartment as his "stash house" where he kept marijuana and supplies to distribute it, and the "the jury was entitled to hear this contextual evidence in order to properly evaluate all the evidence." We are not convinced by this argument because the State ignores that same transaction contextual evidence "is admissible only when the offense would make little or no sense without also bringing in the same transaction evidence." *McDonald v. State*, 179 S.W.3d 571, 577 (Tex. Crim. App. 2005) (quotation marks and footnote omitted); *see Wyatt*, 23 S.W.3d at 25. The State does not explain why not knowing about the evidence police found in Flores' apartment would impair the jury's understanding of the offense of possession of the marijuana in the automobile, and we do not see why the jury would need it to fully understand Count IV. We conclude that the evidence from Flores' apartment is not same transaction contextual evidence and that the trial court abused its discretion in admitting it. *See McDonald,* 179 S.W.3d at 577; *Wyatt*, 23 S.W.3d at 25; *Devoe*, 354 S.W.3d at 469; *Carter v. State*, 145 S.W.3d 702, 707–08 (Tex. App.—Dallas 2004, pet. ref'd) (holding that when police arrested appellant for a previous cocaine sale to an undercover officer, cocaine seized in the house at the time of the arrest was not same transaction contextual evidence of the previous sale).

### 3. Harm

We must now analyze the record for harm.[8]  When evidence is erroneously admitted, and the error is not constitutional, we apply the harmless error standard of Rule 44.2(b) where we disregard all errors that did not affect appellant's substantial rights.  *See* TEX. R. APP. P. 44.2(b); *VanNortrick v. State*, 227 S.W.3d 706, 708 (Tex. Crim. App. 2007).  We "must disregard the error if the court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003) (quotations marks omitted). The Texas Court of Criminal Appeals instructs us to consider factors such as testimony, physical evidence, the jury charge, the theories of the State and defense, closing arguments, voir dire, whether the erroneously-admitted evidence was cumulative, whether the evidence was elicited from an expert, and whether the State emphasized the evidence.  *Id.*; *see Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  Neither party has the burden to establish or refute harm.  *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001).  Instead, "it is the duty of the reviewing court to assess harm from the context of the error."  *Id.*

---

[8] Appellant also objected to the admission of the evidence from the apartment under Rules of Evidence 401 and 403 and renewed those objections on appeal.  *See* TEX. R. EVID. 401, 403.  The State did not respond to either issue, and appellant argues that we should treat the State's failure to respond as a confession of error.  The State's failure to respond, although certainly a factor in our analysis, does not alter this Court's duty to conduct an independent examination of the record for harm.  *See Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001).  This remains true even if the State filed no brief at all.  *See Siverand v. State*, 89 S.W.3d 216, 221 (Tex. App.—Corpus Christi 2002, no pet.); *see also Saldano v. State*, 70 S.W.3d 873, 884 (Tex. Crim. App. 2002) (en banc) ("When presented with confessions of error, we have agreed frequently that . . . error was presented.  But we have always done so after an independent examination of the merits of the claim of error.").

The case appellant cites for the opposite proposition, *Schaffer v. State*, 777 S.W.2d 111, 115 (Tex. Crim. App. 1989) (en banc), does not actually support his argument.  In that case, the Texas Court of Criminal Appeals noted that the State did not argue the error was harmless or challenge the court of appeals' decision to the contrary.  *Id.*  The *Schaffer* Court considered the State's failure to respond as a factor, but it also independently analyzed the record for harm.  *Id.*

Appellant argues that admitting the evidence from Flores' apartment affected his substantial rights because one of the reasons that State gave for the jury to return a guilty verdict on Count IV was the marijuana from the apartment showed that appellant was a "drug dealer." Appellant asserts that this made the State's case "significantly more persuasive and Appellant's case significantly less so." We disagree.

We have thoroughly reviewed the record to determine the magnitude of the harm resulting from the erroneous admission of evidence. We agree that the evidence played a large part in the State's case. Appellant's trial counsel pursued a strategy of calling into question appellant's connection to the marijuana found in the vehicle: he vigorously cross-examined the officer who testified appellant was hiding something under his shirt when he left the apartment and highlighted the lack of fingerprint evidence on the baggies of marijuana found in the car. The State used the evidence from the apartment, including the identification found in the bag with the marijuana, to counteract this strategy and connect the marijuana in the car with appellant. Nevertheless, we conclude that the admission of this evidence was harmless error given that the extent of the other evidence for appellant's guilt on Count IV. First, the State found the marijuana hidden in appellant's truck. Next, an officer observed appellant exit the apartment building appearing to hide something under his shirt. Finally, appellant chose to lead police on a high-speech chase instead of submitting to the traffic stop. *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994) ("Evidence of flight or escape is admissible as a circumstance from which an inference of guilt may be drawn."); *see also Lockett v. State*, No. 07-11-0212-CR, 2012 WL 1191636, at *1 (Tex. App.—Amarillo Apr. 10, 2012, pet. ref'd) (per curiam) (mem. op., not designated for publication) (finding that the defendant's decision to flee

27

from a traffic stop initiated "for failing to have a front license plate" was "a significant factor supporting [the defendant's] guilt" for possession of cocaine). Based on all of the foregoing, we have "fair assurance" that the evidence from Flores's apartment did not affect the verdict on Count IV or had only a slight effect. *See Bagheri*, 119 S.W.3d at 763. We overrule appellant's seventh through twelfth issues.

## VII. ISSUE THIRTEEN: INEFFECTIVE ASSISTANCE OF COUNSEL

By his thirteenth issue, appellant argues that he received infective assistance of counsel at the guilt-innocence stage because his trial counsel: (1) failed to object when the jury charge "did not restrict any language dealing with Appellant's culpable mental state to the 'result' of his conduct"; (2) did not request a jury charge on the defense of mistake of fact; and (3) did not file a motion in limine preventing the State or the witnesses from referring to Marie de La Luz or Orsornio as "victims." The affidavit of appellant's trial counsel, which we discussed in our analysis of appellant's first issue, also asserts that he did not have a trial strategy for failing to do these three things.

### A. Standard of Review and Applicable Law

We evaluate claims of ineffective assistance of counsel under the strict standards set forth by the United States Supreme Court in *Strickland v. Washington*. 466 U.S. 668, 687 (1984); *see Foley*, 327 S.W.3d at 913. Under the *Strickland* standard, appellant must show by a preponderance of evidence that: (1) trial counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that the result of the proceeding would have been different but for the attorney's deficient performance. *Strickland*, 466 U.S. at 687. We may address either prong first, and if an appellant fails to prove one prong of the test, we need not address the other prong. *Id.*

28

When evaluating a claim of ineffective assistance, we look at the totality of the representation and the particular circumstances of the case. *Thompson,* 9 S.W.3d at 813. Our review is highly deferential to trial counsel, avoiding the deleterious effects of hindsight, and we strongly presume that the assistance counsel provided was within the wide range of reasonable professional assistance. *Id.* Allegations of ineffectiveness must therefore be "firmly founded in the record." *Id.*

## B. Discussion

Appellant's first argument boils down to this: the State was required to prove that appellant caused Marie de La Luz's death with a particular culpable mental state, and appellant's trial counsel was ineffective for failing to hold the State to that requirement. We disagree because the Texas Court of Criminal Appeals has affirmatively held that the felony murder statute "plainly dispenses with a culpable mental state." *Lomax v. State*, 233 S.W.3d 302, 305 (Tex. Crim. App. 2007); *see Bigon*, 252 S.W.3d at 365 (applying *Lomax*); *see also Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004) (en banc) ("Felony murder is an unintentional murder committed in the course of committing a felony . . . .").[9] Accordingly, we conclude that trial counsel was not deficient for failing to request the trial court to limit the culpable mental state language in the jury charge.

Appellant next asserts that his trial counsel was deficient for failing to request a jury charge on mistake of fact, specifically that appellant believed that he was being chased by criminals using "pseudo cop" cars who wanted to rob him instead of actual law

---

[9] Appellant cites a case where a court of appeals concluded that felony murder is a "result of conduct offense" for which "the culpable mental state for the act of murder is supplied by the mental state accompanying the underlying committed or attempted felony giving rise to the act." *Cooper v. State*, 842 S.W.2d 414, 421 (Tex. App.—Beaumont 1992, no pet.). However, *Cooper* relied on a 1977 case that the Texas Court of Criminal Appeals later expressly overruled. *See Rodriquez v. State*, 548 S.W.2d 26, 28–29 (Tex. Crim. App. 1977) *overruled in relevant part by Lomax v. State*, 233 S.W.3d 302, 307 (Tex. Crim. App. 2007).

29

enforcement.  The Texas Penal Code states that "it is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense."  TEX. PENAL CODE ANN. § 8.02(a) (West, Westlaw through 2013 3d C.S.); *see Granger v. State*, 3 S.W.3d 36, 41 (Tex. Crim. App. 1999).  A defendant is not required to testify to merit an instruction and may rely on other evidence introduced at trial.  *Lima v. State*, 107 S.W.3d 774, 777 (Tex. App.—Corpus Christi 2003, no pet.).  The evidence that raises the issue may be "weak or strong, unimpeached or contradicted," and the trial court judge's views on the credibility of the evidence that raises the issue are not relevant.  *Reyes v. State*, 422 S.W.3d 18, 28–29 (Tex. App.—Waco 2013, pet. ref'd).

The State argues that appellant was not entitled to an instruction because appellant did not testify and "made no claim that he was mistaken about any fact."  We agree with appellant that he was not required to testify and make the claim himself, but there still must be evidence that raises the issue that appellant was mistaken about whether he was being chased by law enforcement officers.  Appellant relies on Officer Garcia's answers on cross-examination, where Officer Garcia testified that sometimes criminals use cars resembling police vehicles to pull people over and rob them and that such a crime occurred in Harlingen in the past.  But the officer did not testify as to whether appellant was mistaken about the identity of the persons chasing him.  Appellant points us to no other evidence in the record raising the defense of mistake of fact, and we have found none.

Appellant nevertheless argues that this case is "indistinguishable" from a Houston case where the court of appeals reversed a defendant's conviction because the trial court

erroneously denied the defendant's request for an instruction on mistake of fact. *See Anderson v. State*, 11 S.W.3d 369, 373 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). We find *Anderson* distinguishable because there was evidence in that case that the defendant did not know he was being chased by peace officers: he was first chased by a campus police officer in civilian clothes driving an unmarked car who was later joined by an uniformed campus officer who was not in the traditional blue police uniform and driving a car that was not prominently marked. *See id.* There is no evidence in this case that the officers who first attempted to stop appellant or any of the officers who joined the chase were not wearing traditional police uniforms or driving anything other than well-marked police units. We accordingly reject appellant's argument that counsel acted deficiently by not requesting a mistake of fact instruction. *See Lima*, 107 S.W.3d at 777 (counsel not ineffective for failing to request an instruction when the defendant did not testify and there was no other evidence offered regarding the defendant's mistaken belief).

By his final argument, appellant asserts that trial counsel was deficient for not filing a motion in limine to prevent the State and its witnesses from referring to Marie de La Luz and Orsornio by the word "victim" without a specific ruling by the trial court. Appellant cites to two cases where the trial court used phrases such as "victim" to refer to a complainant and the courts of appeals held that was error because it constituted a judicial comment on the weight of the evidence. *See Veteto v. State*, 8 S.W.3d 805, 817 (Tex. App.—Waco 2000, pet. ref'd), *abrogated on other grounds*, *State v. Crook*, 248 S.W.3d 172, 176–77 (Tex. Crim. App. 2008); *Talkington v. State*, 682 S.W.2d 674, 675 (Tex. App.—Eastland 1984, pet. ref'd). Appellant argues that references to complainants as

"victims" by witnesses and attorneys "is no less improper and unfairly prejudicial . . . because the references suggest personal opinions that a crime has, in fact, occurred" and that counsel's failure to recognize this was deficient performance. But appellant does not point us to any case law where a court deemed counsel's failure to prevent the State and its witnesses from referring to complainants as "victims" deficient performance, or even that the State's use of such terms is improper, and we have found none. We accordingly reject appellant's argument that his counsel performed deficiently by failing to file this motion in limine. *See Weatherly v. State*, 283 S.W.3d 481, 486 (Tex. App.—Beaumont 2009, pet. ref'd) (observing in dicta that "[w]hile use of the word 'victim' assumes a crime has been committed, the fact that a prosecutor is of that view would not surprise a reasonable juror, nor would the prosecutor's use of the word . . . generally be understood as anything other than the contention of the prosecution."); *see also Byler v. State*, No. 03-01-00012-CR, 2002 WL 347753, at *3 (Tex. App.—Austin Mar. 7, 2002, pet. ref'd) (mem. op., not designated for publication) (rejecting argument that counsel was ineffective "by allowing the State to use the word 'victim'" and collecting cases where the prosecution employed terms such as "this killer" and "butcher" to refer to the defendant). We overrule appellant's thirteenth issue.

## VIII. CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
14th day of August, 2014.