**AFFIRMED; Opinion Filed July 24, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00562-CR

**TODD ALLEN REICH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-80306-2013**

# MEMORANDUM OPINION

Before Justices Brown, Stoddart, and Schenck
Opinion by Justice Stoddart

A jury convicted Todd Reich of two counts of indecency with a child by contact. On appeal, Reich argues: (1) the evidence is insufficient to support his conviction for touching the complainant's breasts; (2) the trial court erred by overruling his objection to the State's failure to notify him the State would seek to prove the complainant was younger than fourteen years old; (3) the trial court erred by overruling his objection to the prosecutor's closing arguments about burden of proof; (4) the State delayed disclosing evidence; (5) the trial court erred by admitting testimony from an undisclosed witness; and (6) the trial court erred by overruling his objection to the prosecutor referring to the complainant as the "victim." We affirm the trial court's judgment.

FACTUAL BACKGROUND

The complainant, A.D., attended Hunt Elementary School where Reich was her physical education teacher. A.D. testified when she was in kindergarten, her relationship with Reich was like a friendship and they spent a lot of time alone together. Reich also was her teacher when she was in first, second, and third grades. Reich would keep A.D. after class to talk to him. He also would have her sit on his lap, he would scratch her back underneath her shirt, and sometimes he would touch her bottom. When A.D. would sit on his lap, Reich would make her touch him "down near the private parts." One day when A.D. was in second grade, she was not participating in physical education class because she had a broken arm. Reich called A.D. to him and had A.D. sit on his lap. A.D. testified while she was sitting on his lap, Reich made her touch "[h]is lower private part" that he uses for "[g]oing to the bathroom."

Reich also would hug A.D. very hard as though he were going to pick her up. Sometimes when he would hug her, A.D. testified, "it felt like he would touch my chest area . . . When he stopped hugging me, he would kind of just place his hands there and push me away." Reich told A.D. she should not tell anyone and, if she did, he would hurt her, her parents, and her dog.

Billy Lanier, an investigator with the Collin County Sheriff's Office, testified he interviewed Reich. Reich told Lanier that A.D. was the sexual aggressor and at the time he interacted with A.D. "he was at a point in his life that he was depressed, lonely and was seeking out affection. . . . he was at a point in his life that he was alone, he did not have a girlfriend, that he developed a relationship with these children and that he was looking for affection and these- - children were the ones that were supplying that to him." When asked whether Reich said he accidentally or purposefully touched A.D.'s breasts, Lanier answered "[i]nitially accidental, then purposeful at the end" of the interview. Lanier testified: "he said that yes, it was intentional that

[sic] when he did touch her on the breast." Lanier further testified it is extremely common for people who commit sex offenses to portray the touching as accidental or playful.

## A. Sufficiency of the Evidence

In his first issue, Reich argues the evidence is insufficient to show he intentionally touched A.D.'s breasts with the intention to arouse and gratify sexual desire. Reich concedes he touched A.D.'s breasts. His argument is the evidence is insufficient to show "he did so intentionally, and, if so, with the intent to arouse and gratify sexual desire."

We review a challenge to the sufficiency of the evidence on a criminal offense for which the State has the burden of proof under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). Under this standard, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2011).

This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Therefore, in analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* When the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict and therefore defer to that determination. *Id.* Direct and circumstantial evidence are treated equally: circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.*

The evidence shows Reich liked to spend a lot of time alone with A.D., and he kept her after class to talk to her. Reich had A.D. sit on his lap, he touched her bottom, he put his hands on her back and under her shirt, he put her hands on his penis, and he told her not to tell anyone about their interactions. He also "would touch [her] chest area" and would "kind of place his hands" on her chest area. Lanier testified Reich was seeking affection from the children he taught and Reich told Lanier he intentionally touched A.D. on her breasts. From this evidence, a reasonable jury could infer the requisite intent by Reich. *See id.*; *see also Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).

Although Reich argues on appeal that in the video of his police interrogation, he admitted he "may have brushed against [her] breasts accidentally, in the course of picking her up, but he never intentionally touched her breasts," the jury was responsible for resolving any conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts. *See Clayton*, 235 S.W.3d at 778. In contrast to Reich's testimony, Lanier testified it is extremely common for people who commit sex offenses to portray the touching as accidental or playful. The jury also heard A.D.'s testimony. We must assume the jury weighed Reich's credibility, as well as the other evidence, to reach its conclusion, and we defer to the jury's credibility determination. *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.).

Viewing the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that Reich intentionally touched A.D.'s breasts with the intention to arouse and gratify sexual desire. *See Clayton*, 235 S.W.3d at 778. We overrule Reich's first issue.

**B.     Notice of A.D.'s Age**

In his second issue, Reich argues the trial court erred by overruling his objection to the State's failure to notify him in writing that A.D. was younger than fourteen years of age. (Because A.D. was younger than fourteen at the time of the offense, Reich was ineligible for community supervision.  *See* TEX. CODE CRIM. PROC. ANN. art., 42.12, § 4(d)(5) (West Supp. 2014)).  Tracking the statute, the indictment charged Reich with indecency with a child younger than seventeen years of age.

Section 4(d)(5) of article 42.12 of the code of criminal procedure states: "A defendant is not eligible for community supervision under this section if the defendant is convicted of an offense listed in Section 3g(a)(1)(C), (E), or (H), if the victim of the offense was younger than fourteen years of age at the time the offense was committed."  *Id.*  Reich was convicted of an offense listed in section 3g(a)(1)(C), indecency with a child.  Nothing in section 4(d)(5) requires the State to provide written notice that the victim is under the age of fourteen to the defendant. *Id.*

We do not reach the issue of whether the State is required to notify a defendant in writing when the victim is under the age of fourteen because, in this case, the record shows Reich had actual notice of A.D.'s age.  Even if written notice was required—an issue we do not address—it is uncontested Reich had actual knowledge prior to trial that A.D. was under the age of fourteen and the impact of her age on his potential punishment.  Several days before trial began, Reich filed a "Motion to Declare the Punishment of T.P.C. Offense 21.11(a)(1)–Indecency By Contact– Unconstitutional," in which he stated: "Defendant is charged with Indecency with a Child (under 14 via contact) per 21.11(a)(1)."  In the motion, Reich acknowledged he "is <u>statutorily prevented</u> from being eligible to receive probation if a jury (or judge) were to find Defendant guilty of the

underlying charge" because of section 4(d)(5) of the code of criminal procedure. Reich's motion shows he was on notice of A.D.'s age and the impact on his potential punishment before trial.

We overrule Reich's second issue.

## C. State's Closing Arguments

In his third and fourth issues, Reich argues the trial court erred by overruling his objections to the prosecutor's closing arguments, which, he asserts, misstated and shifted the State's burden of proof.

We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Proper jury arguments generally fall within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to opposing counsel's argument, and (4) plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). When examining challenges to jury argument, we consider the remark in the context in which it appears. *Jackson v. State*, 17 S.W.3d 664, 675 (Tex. Crim. App. 2000) (citing *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988)).

At trial, Reich raised objections to the State's final closing argument:

[Prosecutor]: You would agree with me that a child who would say something about this to this seriousness, that would say something like this that wasn't true, that would be an evil child. This is a person in her forensic interview that says she likes going to Catholic school because she likes going to Mass. This is a person who described how she never told her friend I was sexually assaulted. I never used those words she said, but maybe it is a good thing that my friend used those words. Maybe God sent my friend. That's what she said. You know she is not an evil child.

[Defense counsel]: Again, Judge, I am going to object. It is lowering the burden and that's improper.

THE COURT: Ladies and gentlemen, you will receive the burden of proof in the Charge of the Court.

[Defense counsel]: With all due respect, Your Honor, can I get a ruling?

THE COURT:        Overruled.

Reich argues the trial court erred by overruling his objections to the prosecutor's statement that the jury's verdict would reflect whether A.D. was "an evil child that would make up such horrible accusations."  From the context of this record, the trial court could have concluded the prosecutor was responding to arguments from Reich's counsel attacking A.D.'s credibility.  In his closing, Reich's counsel argued:

> [Defense counsel]:    Now, what's this table over here [prosecutor's table] going to do? They are going to ride in here on two horses.  Horse number one, Todd is a monster.  Horse number two, believe [A.D.] one hundred percent.
> . . . .
> [Defense counsel]:    Horse number two.  Let's be clear about something.  In order for you to convict, you are going to have to believe [A.D.] one hundred percent, so let's talk about [A.D.].
> . . . .
> [Defense counsel]:    What goes on in the mind of a nine-year-old? Who knows? . . . I don't know.  I will never know.

Only after Reich's counsel argued the jury would need to believe A.D. "one hundred percent" and questioned "what goes on in the mind of a nine-year-old" did the prosecutor postulate that only an "evil child" would fabricate the accusations made by A.D.  Because the trial court could have concluded the prosecutor's statement fell within the area of answering opposing counsel's arguments, we conclude the trial court did not abuse its discretion by overruling Reich's counsel's objections.

Reich also complains the court erred by overruling his objection to the prosecutor's statement about Reich's subpoena power.  In apparent anticipation of the prosecutor's final closing argument, Reich's counsel argued:

> And I want to digress, momentarily. This prosecutor gets up here and starts talking about equal subpoena power.  The burden is on her. Just because I am aggressive, just because I go out and do my job and I get exhibits doesn't mean I have anything to proactively do.  I don't play checkers.  I do my job.  And you

may not like me, and I understand that. And that just goes with the territory. But don't you let this good prosecutor get up here and turn the tables because the burden always stays with her.

The State responded in its final closing argument:

[Prosecutor]: And I do mention that the Defense has equal subpoena power. They had every statement. They had the opportunity to talk to every witness, and you can't just throw things out. And even though it is my burden of proof, if there was something that somebody else had to say, they had every opportunity to bring that person.

[Defense counsel]:     I would object to that. That's shifting the burden also.

        THE COURT:        Overruled.

The record shows that Reich's counsel first raised the equal subpoena power issue before the prosecutor ever mentioned it in front of the jury. The trial court could have concluded the prosecutor's reference to equal subpoena was responsive to defense counsel's remark. Additionally, a prosecutor may comment on a defendant's failure to produce witnesses and evidence so long as the comment does not fault the defendant for exercising his right not to testify. *See Jackson*, 17 S.W.3d at 674; *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995) (if language can reasonably be construed to refer to appellant's failure to produce evidence other than own testimony, comment is not improper). Because the prosecutor's comment was properly directed toward Reich's ability to subpoena witnesses and not toward Reich's failure to testify, we conclude the trial court did not abuse its discretion by overruling Reich's objections.

Even if the trial court erred by overruling the objections, the trial court cured any harm or prejudice that might have occurred. The jury charge included instructions about the burden of proof, and Reich does not complain about these instructions on appeal. We presume the jury followed the court's instructions absent evidence to the contrary, which Reich has not provided. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011); *Wesbrook v. State*, 29 S.W.2d 103, 116 (Tex. Crim. App. 2000). By advising the jury on the proper burden of proof, we

conclude the trial court cured any harm or prejudice that might have occurred. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (holding court generally presumes jury will follow judge's instructions).

We overrule Reich's third and fourth issues.

## D.   *Brady* **Material**

In his fifth issue, Reich argues the State improperly delayed disclosing four pieces of evidence in violation of his rights under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and he was prejudiced because he would have conducted voir dire and used his peremptory strikes differently if he had known about the evidence earlier.[1]

To establish a claim under *Brady*, a defendant must demonstrate "(1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; [and] (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different." *Ex parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012) (citing *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002)). However, "*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist." *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011); *see also Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006). The State's duty to produce *Brady* material attaches when the information comes into the State's possession. *Harm*, 183 S.W.3d at 407.

Reich complains about four pieces of evidence:

---

[1] In his brief, Reich also argues his counsel would have conducted opening argument differently if he had known about the evidence. However, Reich's counsel had the evidence prior to opening arguments.

Court's Exhibit 1: A letter from a civil attorney representing A.D.'s family to the Plano Independent School District advising the district that civil litigation was a "virtual certainty."

Court's Exhibit 2: Notice that A.D.'s mother changed a prior statement she made about the school district's investigation of A.D.'s allegations. She originally stated "we do feel it was investigated properly." She revised her statement to: "we do not feel it was investigated properly."

Court's Exhibit 3: A hand-written journal entry from A.D.

Court's Exhibit 4: A.D.'s mother's voluntary statement to police.

Before making their opening statements, the parties made arguments to the trial court about whether the State properly disclosed the evidence, and the trial court overruled Reich's *Brady* objections.

The prosecutor explained that on the Thursday or Friday before trial, she received a telephone call from a civil attorney representing the Hunt Elementary School principal. The attorney informed the prosecutor he had been hired because Plano ISD believed it might be sued based on a letter sent by an attorney representing A.D.'s family. The prosecutor asked the lawyer to send the letter to him, which he did not do immediately. However, when she did receive it, the prosecutor sent the letter to Reich's counsel. Reich does not dispute the prosecutor's explanation about how and when she came into possession of Court's Exhibit 1.

As to Court's Exhibit 2, the prosecutor explained that when she met with A.D.'s mother as part of her trial preparation, A.D.'s mother informed the prosecutor that she omitted the word "not" from the sentence about whether the school properly investigated the allegations. The prosecutor told the trial court: "So I sent an email to the Defense saying she left out the word 'not.'" In response to the email, Reich's counsel also asked for a copy of the mother's witness statement, Court's Exhibit 4, which the prosecutor provided, even though she previously produced the witness statement to defense counsel several months earlier. The prosecutor

provided the trial court with her original email sending Court's Exhibit 4 to Reich's counsel; the email was dated several months prior to trial.

Finally, during the same meeting with A.D.'s mother, A.D.'s mother provided the prosecutor with two pages from A.D.'s journal (Court's Exhibit 3). The prosecutor told the trial court: "I did not know that existed when they came in for witness prep." The prosecutor then provided a copy to Reich's counsel.

There is no indication in this record that the State delayed providing any evidence to Reich. Rather, the record shows the State produced all four exhibits promptly. The State had no obligation to produce the evidence before it knew the evidence existed. *See Pena*, 353 S.W.3d at 810; *Harm*, 183 S.W.3d at 407. Because the record does not support the conclusion the State withheld evidence, we conclude Reich has not shown the State violated his rights under *Brady*. We overrule Reich's fifth issue.

**E.    Witness List**

In his sixth issue, Reich argues the trial court erred by admitting Billy Lanier's testimony because his name was not included on the State's witness list. During voir dire, the State informed Reich that it failed to include Lanier on its witness list, and the State intended to call Lanier during trial. Lanier is the investigator who interviewed Reich for more than two hours about the allegations by A.D. The State also told the trial court that Lanier's name appeared in the offense report.

We review the trial court's decision to permit Lanier's testimony for an abuse of discretion. *See Wood v. State*, 18 S.W.3d 642, 650 (Tex. Crim. App. 2000). "If the trial judge allows a witness to testify who does not appear on the State's witness list, we consider whether the prosecutor's actions constitute 'bad faith' and whether the defendant could have reasonably anticipated the witness' testimony." *Id.* In his brief, Reich concedes there is no evidence of bad

faith by the prosecutor, but he argues his counsel could not have reasonably anticipated Lanier would be called as a witness. We disagree.

Given the nature of the interaction between Reich and Lanier, Reich's counsel reasonably could have anticipated Lanier would be called as a witness. Reich's counsel indicated at trial that he was not surprised by the State adding Lanier. The following exchange occurred with the trial court:

> THE COURT: Okay. [Defense counsel], [the prosecutor] says you are not going to be surprised that they would call the person who interviewed the alleged victim [sic] in this case, and I would tend to agree with you not being surprised.
>
> [Defense counsel]: I may not disagree with that completely. However, just because [co-counsel] and myself may be a little bit more advanced than a novice criminal defense lawyer, we shouldn't be punished that way.

In light of the role Lanier played in the investigation of A.D.'s allegations, including interviewing Reich for more than two hours, his name appearing in the offense report, and Reich's counsel's representation to the trial court that he was not surprised, we conclude the trial court did not abuse its discretion by permitting Lanier to testify. We overrule Reich's sixth issue.

## F. Referring to A.D. as a "Victim"

Reich filed a motion in limine to prohibit the State from using the word "victim" in front of the jury because he denied any criminal sexual conduct occurred and the word "victim" implied the State met its burden to show the alleged crime was committed. The judge denied the motion, but granted Reich's request for a running objection. In his seventh issue, Reich argues the trial court erred by overruling his objection and allowing the State to refer to A.D. as the "victim." Even if we assume the trial court erred, we conclude Reich was not harmed.

Reich and the State agree that no Texas court has determined whether the State's use of the word "victim" is improper. However, when considering whether a defendant suffered

ineffective assistance of counsel when his lawyer failed to object to a prosecutor's use of the term victim, our sister court commented the word "victim" is "not so inflammatory or prejudicial as to necessarily cause harm to the defendant when used occasionally in a lengthy trial by the attorneys or witnesses." *Weatherly v. State*, 283 S.W.3d 481, 486 (Tex. App.—Beaumont 2009, pet. ref'd). The Corpus Christi court rejected a similar argument. *See Gonzalez v. State*, No. 13-13-00427-CR, 2014 WL 4049800, at *16 (Tex. App.—Corpus Christi Aug. 14, 2014, pet. ref'd) (citing *Weatherly*, 293 S.W.3d at 486; *Byler v. State*, No. 03–01–00012–CR, 2002 WL 347753, at *3 (Tex. App.—Austin Mar. 7, 2002, pet. ref'd) (mem. op., not designated for publication) (rejecting argument that counsel was ineffective "by allowing the State to use the word 'victim'" and collecting cases where prosecution employed terms such as "this killer" and "butcher" to refer to defendant)). "[T]he word 'victim' is mild and non-prejudicial, and is commonly used at trial in a neutral manner to describe the events in question. . . . it is not error for the State, witnesses, or defense counsel to use the word 'victim' at trial." *Tollefson v. Stephens*, Nos. SA: 14-CV-144-DAE, SA: 14-CV-171-DAE, 2014 WL 7339119, at *17 (W.D. Tex. Dec. 23, 2014).

Under Rule 44.2(b), any error that does not affect a substantial right must be disregarded. TEX. R. APP. P. 44.2(b). A substantial right is affected when "the error has a substantial and injurious effect or influence in determining the jury's verdict." *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). When conducting a harm analysis, we consider the whole record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and

whether the State emphasized the error.  *Easley v. State*, 424 S.W.3d 535, 542 (Tex. Crim. App. 2014); *Rich*, 160 S.W.3d at 577.

After examining the entire record, we conclude the error was harmless.  The State used the term "victim" to refer to A.D. in the jury's presence nine times during a two-day jury trial. Defense counsel also referred to A.D. as a "victim" in front of the jury.[2]  Here the State's use of the word victim in this case was not so inflammatory or prejudicial as to affect Reich's substantial rights.  We overrule Reich's seventh issue.

CONCLUSION

We affirm the trial court's judgment.

/Craig Stoddart/

CRAIG STODDART

DO NOT PUBLISH

JUSTICE

TEX. R. APP. P. 47

140562F.U05

---

[2] Defense counsel had the following exchange with a witness:

Q. And that brings me to a great question. You mentioned the reason the victim in this case was taken to the Child Advocacy Center was why?

A. Why the victim was?

Q. Correct.

A. To be forensically interviewed.

Q. Why would you need a forensic interview of the potential victim?

A. So that it could be recorded.



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

TODD ALLEN REICH, Appellant

No. 05-14-00562-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-80306-2013.
Opinion delivered by Justice Stoddart.
Justices Brown and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 24th day of July, 2015.