*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 4, 2023

Plaintiff-Appellee,

v

No. 359971
Kent Circuit Court
LC No. 19-010673-FC

BYRON ANTOINE MORRIS,

Defendant-Appellant.

Before: SHAPIRO, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Defendant, Byron Antoine Morris, appeals of right after a jury found him guilty of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c); kidnapping, MCL 750.349; and unarmed robbery, MCL 750.530. The trial court sentenced him, as a fourth-offense habitual offender, MCL 769.12, to 70 to 150 years' imprisonment for each count of CSC-I, 30 to 75 years' imprisonment for kidnapping, and 9 to 75 years' imprisonment for unarmed robbery. The charges arose from an incident where defendant sexually assaulted a 64-year-old woman while she was working at a convenience store and stole money and other personal property from another woman's purse as he left the store. Defendant conceded that he engaged in sexual conduct with the store employee, but he maintained that the encounter was consensual. Defendant also admitted that he stole money and personal property from the other woman's purse. Defendant challenges his convictions and sentences. We affirm.

## I. FACTUAL BACKGROUND

In November 2019, defendant entered a convenience store when BR, a 64-year-old woman, was the lone employee on duty. The first-time defendant entered the store, he asked BR if he could use the bathroom, and he did so. When BR went back to check on defendant, the bathroom door was open and defendant had his shirt off and was "washing up." BR then kicked defendant out of the store. Defendant thereafter returned and ordered BR into the bathroom. He followed her into the bathroom and locked the door. Defendant told BR that, if she screamed, he would kill her. BR explained that she did not attempt to fight back because defendant looked much stronger than her and she did not want to get hurt. Defendant forced BR to perform oral sex on him and forced her

-1-

to submit to various acts involving sexual penetration. Defendant eventually fled, stealing BR's clothing. On his way out of the store, defendant ran into LC, who was in the store as a customer. That collision caused LC's purse to fall to the ground. Defendant took LC's phone, money, credit cards, and other items from her purse and left the premises.

Defendant testified that he did not know BR before that day. He did not dispute that sexual activity occurred between the two of them, but he alleged it was consensual and that BR voluntarily walked to the bathroom. Defendant denied threatening BR. But defendant did acknowledge that he stole items from LC's purse on his way out of the store. After a trial, the jury found defendant guilty on all four counts. At defendant's sentencing hearing, defense counsel informed the court that defendant did not have any objection to the scoring of any prior record variable (PRV) or any offense variable (OV). This appeal of right followed.

## II. LEGAL ANALYSIS

Defendant argues on appeal that the prosecutor committed misconduct on several occasions during the trial and that he was denied a fair trial because of the cumulative effect of those improper acts. Defendant further asserts that his attorney was ineffective for failing to object to the acts of prosecutorial misconduct and for using the word "victim" and the phrase "alleged victim" during jury selection. Finally, defendant challenges his sentences, alleging that the trial court improperly assessed points against him under PRV 6, OV 4, and OV 10, and that his attorney was ineffective in failing to challenge the scoring of those variables. We will address each of those issues in turn.

## A. PROSECUTORIAL MISCONDUCT

Defendant contends that the prosecutor committed misconduct throughout the trial. To be precise, defendant asserts that the prosecutor: (1) vouched for the credibility of the complainant; (2) appealed to the sympathy of the jury; (3) referred to the complainant as "the victim"; and (4) denigrated his defense counsel. Additionally, defendant argues that even if none of the identified conduct, standing alone, warrants a new trial, the cumulative effect of the misconduct requires that relief. Alternatively, defendant argues that his defense counsel was ineffective for failing to object to the purported prosecutorial misconduct.

Defendant neither objected to the identified prosecutorial misconduct at trial nor requested a curative instruction. Thus, those challenges on appeal are unpreserved. *People v Solloway*, 316 Mich App 174, 201-202; 891 NW2d 255 (2016). This Court reviews unpreserved claims for plain error that affected substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Curative instructions, which the jurors are presumed to follow, are sufficient to overcome the prejudicial effect of most inappropriate prosecutorial statements. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Indeed, " 'we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect.' " *Id*.

The standard for judging prosecutorial misconduct "is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted)." *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). We must review a prosecutor's remarks in the context of the entire record. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "Generally, prosecutors are afforded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks omitted). Accordingly, the prosecutor "is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case[.]" *Dobek*, 274 Mich App at 66.

## 1. VOUCHING FOR WITNESS CREDIBILITY

A prosecutor cannot vouch for the credibility of a witness by implying that the prosecutor has some special knowledge of the witness's truthfulness. *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). "A prosecutor may, however, argue from the facts that a witness is credible[.]" *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). A prosecutor may comment on his or her "own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Thomas*, 260 Mich App at 455.

Here, defendant argues that the prosecutor improperly vouched for BR's credibility during the closing argument. In the identified portion of the prosecutor's closing argument, the prosecutor told the jury that BR was credible because she disclosed the incident immediately, she ran out of the bathroom completely naked in front of strangers, she had never met defendant before, she gave detailed statements about the incident that were consistent, and she had no motive to lie. Nothing in this passage from the prosecutor's closing argument even suggested that she had "some special knowledge of the witness's truthfulness." *Thomas*, 260 Mich App at 455. Instead, the prosecutor just argued from the facts that BR was credible. See *Howard*, 226 Mich App at 548. The testimony of BR and defendant differed on whether the sexual encounter was consensual, which was a central issue at trial. Consequently, it was proper for the prosecutor to comment on BR's credibility. See *Thomas*, 260 Mich App at 455. The prosecutor did not commit misconduct by vouching for BR's credibility, and the prosecutor's comments manifestly did not rise to the level of plain error. See *Carines*, 460 Mich at 763-764.

## 2. APPEAL TO SYMPATHY

Defendant insists that the prosecutor committed misconduct by appealing to the sympathy of the jury when she asked BR a question about BR's personal background. The relevant inquiry is whether BR's testimony concerning her personal background was inadmissible under MRE 402. Accordingly, reliance upon authority regarding a prosecutor's appeal to sympathy during opening statement or closing argument is misplaced. Under MRE 402, "[e]vidence which is not relevant is not admissible." According to MRE 401, "relevant evidence" refers to "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Defendant argues that the prosecutor committed misconduct by asking BR to "tell us a little bit about yourself. Where do you work, how old are you, are you married, things like that?" That question, in defendant's view, was an improper invitation for BR to testify about her background,

the fact that she worked at the store on weekends, that she was married, that she had grandchildren and great grandchildren, and that she would shop for inventory for the store. Defendant's argument is unpersuasive. BR's age coupled with the fact that she was old enough to be a great grandmother was relevant to support BR's allegation that she did not fight back against defendant because she felt she had no chance in a fight and would get hurt. This was a relevant fact because the prosecutor had to establish that the sexual encounter was not consensual even though BR did not fight back. In addition, because the incident occurred at BR's place of work, it was appropriate to establish where BR worked. Defendant insists that this testimony swayed the jury to find guilt based upon emotion, as opposed to relevant evidence. But it is unclear how the testimony elicited, such as the fact that BR was married, had great grandchildren, or that she shopped for inventory for the store, invoked such emotion from the jurors. Furthermore, to the degree that any sympathy was evoked, it was cured with the standard jury instruction given to the jurors that "[y]ou must not let sympathy or prejudice influence your decision."

Beyond that, defendant describes this challenge as a matter of prosecutorial misconduct. The prosecutor did not actually ask BR how many children or grandchildren she had, or what her typical duties were at the store. Consequently, the fact that BR's answer went beyond the scope of the prosecutor's question and offered additional information cannot provide the basis for a valid claim of prosecutorial misconduct. Defendant has failed to establish that the trial court permitting the question from the prosecutor rose to the level of plain error that affected defendant's substantial rights. See *Carines*, 460 Mich at 763.

### 3. USE OF THE WORD "VICTIM"

Defendant contends that the prosecutor's use of the word "victim" at trial was prosecutorial misconduct that prejudiced him. Defendant has cited several instances when the prosecutor used the word "victim," which all occurred during jury selection. In each instance, the prosecutor was referring to "victims" or "a victim" in general, rather than using the word "victim" to specifically refer to BR or some other person. Defendant has not offered any authority to support the argument that it is misconduct for a prosecutor to refer generally to "victims" during jury selection.

Beyond that, we have conducted our own review of the trial transcripts and discovered that the prosecutor repeatedly used the term "victim" to refer to the complaining witness during cross-examination of defendant and closing argument. Time and time again, we have ruled—albeit in unpublished opinions—that "the prosecution did not err or engage in any misconduct by referring to [the complaining witness] as the 'victim' " when charges of criminal sexual conduct were being contested at trial. *People v Jacobs*, unpublished per curiam opinion of the Court of Appeals, issued February 16, 2023 (Docket No. 358738), p 4; *People v Reyes*, unpublished per curiam opinion of the Court of Appeals, issued July 15, 2021 (Docket No. 353003), p 4; *People v Bell*, unpublished per curiam opinion of the Court of Appeals, issued September 26, 2019 (Docket No. 342753), p 2. As we have stated, the reference to the complaining witness in a criminal sexual conduct case as the "victim" is "appropriate and accurate" because "MCL 750.520a(s) [applicable in all criminal sexual conduct cases] defines 'victim' as 'the person alleging to have been subjected to criminal sexual conduct.' " *Reyes*, unpub op at 4; see also *Jacobs*, unpub op at 4; *Bell*, unpub op at 2. This case manifestly involved charges of criminal sexual conduct, so the prosecutor was entitled, under MCL 750.520a(s), to refer to the complaining witness as the "victim."

Defendant relies upon *People v Stanaway*, 446 Mich 643, 678 n 37; 521 NW2d 557 (1994), for the principle that "the legal status of an accuser as victim does not obtain until a conviction is entered." But that statement made in a footnote addressed circumstances far afield from a trial in a criminal sexual conduct case. There, the issue "was whether statutorily privileged health records were discoverable by the defendant in a criminal trial[.]" *Reyes*, unpub op at 4. Consequently, we have repeatedly rejected the contention that *Stanaway* has any bearing upon the propriety of using the word "victim" to describe the complaining witness at a criminal trial where the defendant faces charges of criminal sexual conduct. *Id.*; see also *Bell*, unpub op at 2-3. Instead, we have regularly relied upon the definition of "victim" in MCL 750.520a(s) as the governing rule for referring to a "victim" in trials on charges of criminal sexual conduct, and we do so again in this case by stating that the prosecutor did not err in referring to the complaining witness as a "victim."

But even assuming, *arguendo*, that the prosecutor erred in calling the complaining witness a "victim," defendant did not object to that reference, so our review is limited to a search for plain error affecting substantial rights. *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021). Even the cases cited by defendant recognize that a prosecutor's use of the term "victim" does not rise to the level of plain error. See, e.g., *Jackson v State*, 600 A2d 21, 24-25 (Del, 1991). Indeed, defendant has offered several inapposite decisions from Texas to support his argument, but as the Texas appellate courts have often reasoned, "[w]hile use of the word 'victim' assumes a crime has been committed, the fact that a prosecutor is of that view would not surprise a reasonable juror, nor would the prosecutor's use of the word . . . generally be understood as anything other than the contention of the prosecution." *Weatherly v State*, 283 SW3d 481, 486 (Tex App, 2009), quoted in *Gonzalez v State*, 510 SW3d 10, 32 (Tex App, 2014). Thus, we conclude that the prosecutor's repeated use of the term "victim" in this case did not rise to the level of plain error. Beyond that, the prosecutor's use of the term "victim" did not affect substantial rights because the evidence at trial established beyond all doubt that the sexual encounter between defendant and the complaining witness was not consensual. Finally, any error regarding the prosecutor's use of the word "victim" was addressed by the trial court's jury instruction that "[t]he lawyers' statements and arguments are not evidence." See *Unger*, 278 Mich App at 235. In sum, we find no basis to afford any relief based upon the prosecutor's use of the term "victim" throughout the trial.

## 4. DENIGRATING DEFENSE COUNSEL

Defendant accuses the prosecutor of impermissibly denigrating his defense counsel during rebuttal argument. As a general rule, prosecutors are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236. But "[a] prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). The comments made by the prosecutor "must be considered in light of defense counsel's comments." *Id.* at 592-593. In the course of closing argument, "[a]n otherwise improper remark may not rise to error requiring reversal when the prosecutor is responding to the defense counsel's argument." *Id.* at 593.

Defendant cites the following portion of the prosecutor's rebuttal argument as constituting improper denigration of defense counsel:

What we have here is the typical smoke-screen defense. Defense counsel wants you to focus on all of these things over here that have no bearing on the fact

that his client is guilty. I dared him, give us one—one shred of evidence aside from what your client is saying today that supports the fact that anything about this was consent. He couldn't. He said, ladies and gentlemen, over here. I accept that there, Madam Prosecutor, I accept that. I'm going to tell this jury, and then he—he does not. He instead talks about everything that his client said, all of the lies that were told to you today. Defense counsel wants to tell you this is why I went to law school, for cases like this. That does not matter.

Defendant argues that this was an improper ad hominem attack on defendant and defense counsel, but none of that argument is improper, and it certainly does not rise to the level of plain error.

During the rebuttal, the prosecutor was responding to comments defense counsel made in his closing argument. Defense counsel told the jury that he went to law school "because what is going on right now with [defendant] has gone on too long for people like [defendant], and I'm not going to stand on the sideline and criticize. I'm going to get involved and fix it." Thus, it was the defense attorney who made a personal argument about himself. In response, the prosecutor argued that the defense attorney's personal motivation for taking on the case or pursuing a law career was not relevant to this case. Although it may have been impermissible for the prosecutor to describe defense counsel's argument as a "smoke-screen defense," see *Watson*, 245 Mich App at 592, that was done in response to defense counsel informing the jury about his motivations for going to law school, which had no connection to the evidence presented at trial. Thus, even if the prosecutor's statement might be regarded as improper, it does not warrant reversal because it was a response to defense counsel's closing argument. See *id*. at 593. Furthermore, the prosecutor's arguments that defendant had lied about the sexual encounter being consensual and there was no evidence beyond defendant's own testimony to establish that the sexual encounter was consensual did not constitute improper denigration of defense counsel. Finally, the jury instruction that lawyers' arguments are not evidence is presumed to have cured any issue that the statements may have caused. See *Unger*, 278 Mich App at 235. Defendant has not demonstrated that the prosecutor committed misconduct in her rebuttal argument, and he certainly has not established that her comments amounted to plain error that affected his substantial rights. See *Carines*, 460 Mich at 763.

## 5. CUMULATIVE EFFECT

Finally, defendant argues that the cumulative effect of the acts of prosecutorial misconduct deprived him of a fair trial and mandates reversal. "The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). "[T]he effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *Id*. As we have explained, however, the prosecutor's conduct was not improper, particularly under the plain-error standard of review. And even if the identified acts did rise to the level of prosecutorial misconduct, defendant has not established that he was "seriously prejudiced" by that misconduct. See *id*. Accordingly, defendant is not entitled to a new trial on the basis of cumulative error.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant challenges his convictions by claiming that he received ineffective assistance of counsel. Defendant argues that defense counsel provided ineffective assistance when he referred

to BR as the "victim" or "alleged victim" during jury selection and when he failed to object to the alleged prosecutorial misconduct that we have already discussed. Whether defendant is entitled to a new trial because he received ineffective assistance of counsel is a mixed question of law and fact. *People v Trakhtenberg*, 493 Mich 38, 48; 826 NW2d 136 (2012). This Court reviews the trial court's findings of fact for clear error, while it reviews questions of law de novo. *Id*. When there has been no evidentiary hearing held below, this Court's review is limited to mistakes that are apparent on the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated not in relevant part 493 Mich 864 (2012). In this case, no evidentiary hearing took place. Therefore, our review is limited to mistakes that are apparent on the record. *Id*.

To succeed on his claim of ineffective assistance of counsel, defendant must demonstrate that (1) defense counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 674 (1984). The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Moreover, the "defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

We must first determine whether defense counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 US at 688. In analyzing whether defense counsel's representation fell below that standard, counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690; see also *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). The reviewing court should make this determination in light of all of the circumstances. *Vaughn*, 491 Mich at 670. The reviewing court should "affirmatively entertain the range of possible reasons counsel may have had for proceeding as they did." *Id*. (quotation marks, citation, and alteration omitted). Defense counsel's conduct does not fall below an objective standard of reasonableness if the court "can conceive of a legitimate strategic reason" for that conduct. *People v Clark*, 330 Mich App 392, 427; 948 NW2d 604 (2019). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Next, we must decide whether defendant suffered prejudice because of defense counsel's performance. *Strickland*, 466 US at 694. Defendant has the burden of affirmatively establishing prejudice. See *id*. at 696. Defendant must prove that, but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. See *Trakhtenberg*, 493 Mich at 51. In analyzing prejudice, the trial court "should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Strickland*, 466 US at 695. A verdict or conclusion "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id*. at 696.

Defendant asserts that defense counsel was ineffective for using the word "victim" and the phrase "alleged victim" during jury selection. Defense counsel's use of the phrase "alleged victim"

did not fall below an objective standard of reasonableness.[1] See *Strickland*, 466 US at 688. It was an accurate term to describe BR, and in no way conveyed to the jury that defense counsel believed defendant was guilty. Defense counsel's use of the phrase "alleged victim" did not strip defendant of the presumption of innocence. Thus, defendant has failed to establish that defense counsel was ineffective for using the phrase "alleged victim."

Defendant further argues that defense counsel was ineffective for using the word "victim" during jury selection. Defendant identifies three instances in which defense counsel used the word "victim" without immediately correcting himself by saying "alleged victim." In all three instances, defense counsel was asking jurors whether they believed a victim is required to fight back against a perpetrator of sexual assault. Defense counsel was not referring to BR or any other person when using the word "victim." Defense counsel's conduct did not fall below an objective standard of reasonableness merely because counsel uttered the word "victim" during jury selection when that word was not used to refer to any person involved in this case. See *id*.

Beyond that, defendant must show he was prejudiced by defense counsel's performance. The record does not establish that defense counsel's use of the word "victim" during jury selection prejudiced defendant, and we are not persuaded by defendant's argument that prejudice was "self-evident." Furthermore, the trial court instructed the jury many times that they should decide the case only from the evidence, and the trial court explained to the jury what constituted evidence. The trial court also told the jury that "[t]he lawyers' statements and arguments" were not evidence. Thus, defendant has failed to establish that he was prejudiced by defense counsel's use of the word "victim" in jury selection.

Defendant also contends that his attorney was ineffective for failing to object to the alleged prosecutorial misconduct. But because defendant failed to establish that the prosecutor committed misconduct, he has also failed to establish that defense counsel was ineffective for failing to object to the prosecutor's conduct. *Ericksen*, 288 Mich App at 201; *Douglas*, 496 Mich at 592. In sum, defendant has not shown that his convictions resulted from ineffective assistance of counsel.

## C. SENTENCING

Defendant challenges the long sentences of imprisonment that he received. He insists that the trial court erroneously scored PRV 6, OV 4, and OV 10, but he did not raise any of those issues at his sentencing hearing, he did not move the trial court for resentencing, and he did not move for a remand. Thus, defendant's objections to his sentences are not preserved for appellate review and will be reviewed only for plain error that affected defendant's substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004); *Carines*, 460 Mich at 763.

---

[1] Defendant identified seven instances in which defense counsel said "victim" or "alleged victim," all of which occurred during jury selection. In three of those seven instances, defense counsel used the phrase "alleged victim." In another instance, defense counsel said "victim," and then quickly corrected himself by saying "alleged victim."

### 1. PRV 6

Defendant faults the trial court for scoring 10 points under PRV 6. As MCL 777.56(1)(c) makes clear, 10 points should be assessed when "[t]he offender is on parole, probation, or delayed sentence status or on bond awaiting adjudication or sentencing for a felony[.]" Pursuant to MCL 777.56(2), that applies to involvement "with the criminal justice system in another state or United States." According to the presentence investigation report (PSIR), defendant was on bond and had an active warrant for a felony charge in Illinois on the date of the offenses in this case. Defendant does not dispute the accuracy of that information, so we conclude defendant was on bond when he committed the offenses for which he was convicted in this case. As a result, the trial court did not err in assessing 10 points under PRV 6.

### 2. OV 4

Defendant next asserts that the trial court erred in assessing 10 points under OV 4. A trial court should score 10 points for OV 4 when "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1)(a). It is proper to score 10 points under OV 4 "if the serious psychological injury may require professional treatment." MCL 777.34(2). "[T]he fact that treatment has not been sought is not conclusive." *Id*. A "trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated" even if treatment has not been sought. *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). But "points for OV 4 may not be assessed solely on the basis of a trial court's conclusion that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim[.]" *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017). Additionally, "evidence of fear while a crime is being committed, *by itself*, is insufficient to assess points for OV 4." *Id*.

The sexual assault perpetrated by defendant in this case was horrific, involving penetration in several manners during a kidnapping, as determined by the jury. When BR testified at trial, she explained that she pleaded with defendant "don't hurt me" because she "just thought he was really going to hurt me." She confirmed in testifying that the sexual assault caused her physical pain and that, during the assault, she prayed to God for help. After the assault, she had to take medicine for possible sexually transmitted diseases, and she is now fearful at work and pays greater attention to her surroundings whenever she is at work. Finally, in response to a question from defense counsel that "you got pretty emotional on the stand, didn't you?" BR responded: "Yeah. It's been a rough two years. I'm glad this is coming to a head, getting done with." This evidence, especially in light of defendant's failure to raise an objection at the sentencing hearing that would have resulted in a more comprehensive record, convinces us that the trial court did not commit plain error in scoring 10 points for OV 4.

### 3. OV 10

Finally, defendant argues that the trial court erred in assessing 5 points under OV 10, which addresses exploitation of a vulnerable victim. MCL 777.40(1). The trial court must assess 5 points under OV 10 when "[t]he offender exploited a victim by his or her difference in size or strength, or both . . . ." MCL 777.40(1)(c). In this analysis, "exploit" is defined as "to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). "Vulnerability" is defined as "the readily

apparent susceptibility of a victim to an injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). The defendant must have exploited the victim's vulnerability to qualify for scoring under OV 10. *People v Cannon*, 481 Mich 152, 159; 749 NW2d 257 (2008).

The evidence established that BR was 64 years old at the time of the incident, stood 5'2", and weighed approximately 110 pounds. BR testified that she complied with defendant because she "figured he could crush [her] with one arm." BR discussed defendant's build, explaining that "[h]is arms [were] as big around, maybe bigger than my thighs, and I knew that he lifted weights or did something. I mean, he was a bodybuilder." Defendant admitted he was strong and that BR "wouldn't stand a chance" in a fight with him. Therefore, the trial court did not commit plain error when it found that defendant used his size or strength to exploit BR, and so the trial court did not commit plain error in assessing 5 points against defendant under OV 10.

### 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant alternatively argues that his defense counsel was ineffective for failing to object to the scoring of PRV 6, OV 4, and OV 10. Because defendant has failed to establish that the trial court erred in scoring PRV 6, OV 4, or OV 10, he cannot show that his counsel was ineffective for failing to object to the trial court's scoring decisions on any of those variables. See *Ericksen*, 288 Mich App at 201; *Douglas*, 496 Mich at 592.

Affirmed.

/s/ James Robert Redford
/s/ Christopher P. Yates